**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MAMIE NANNETT DEAN, | No. 11-36060 |
| Plaintiff - Appellant, | D.C. No. 3:10-cv-01073-MO |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM* |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Submitted November 7, 2012**
Portland, Oregon

Before: ALARCÓN, McKEOWN, and PAEZ, Circuit Judges.

Mamie N. Dean appeals from the district court's judgment affirming the

Commissioner of Social Security's final decision that Dean was not disabled and

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

not entitled to Disability Insurance Benefits under Title II of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's order affirming the Commissioner's decision. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). We affirm the decision of the Commissioner where, as here, it is supported by substantial evidence and the Commissioner applied the correct legal standards. *Id.*

1.     The Administrative Law Judge (ALJ) gave "specific, clear and convincing reasons" for rejecting Dean's testimony about the severity of her symptoms. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotations and citation omitted). He found that Dean's testimony was not consistent with the medical evidence, including a report from Dean's psychological provider who "wondered about the validity" of Dean's stories, a report from Dean's doctor stating that she was doing "very well" after surgery, and a report from a medical provider who reported that Dean was "able to endure the benign [heart] palpitations without any problems" once she knew they were not life-threatening. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). The ALJ also found that Dean could "perform a full range of daily activities which is inconsistent with the nature, severity and subjective complaints of the complaint," citing Dean's own testimony and her adult function report about her daily

activities.  We need not decide if the ALJ's other three reasons for rejecting Dean's testimony were clear or convincing, because these two reasons are sufficiently specific, clear, and convincing, and are supported by substantial evidence in the record.  *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

**2.**     There is also substantial evidence supporting the ALJ's rejection of the treating physician's testimony.  Although the opinion of a treating doctor is given more weight than the opinion of a non-treating doctor, the ALJ may reject such an opinion if it is contradicted by another doctor and the ALJ offers "specific and legitimate reasons" for rejecting the opinion.  *Turner*, 613 F.3d at 1222 (quoting *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  Here, the ALJ gave three reasons for rejecting the testimony of Dean's treating physician:  (1) He did not submit objective medical findings, but rather filled out only a standardized form, (2) He appeared to rely mostly on Dean's subjective reporting, and (3) His findings were inconsistent with those of the State's physicians.  These reasons are supported by substantial evidence in the record, including an eight-page checklist on which Dean's treating doctor provided primarily conclusory "yes" or "no" answers which were based on Dean's subjective symptoms.  The ALJ therefore provided sufficiently specific and legitimate reasons for rejecting the testimony of Dean's treating doctor.  *See Batson*, 359 F.3d at 1195 (affirming ALJ's rejection of

3

doctor's opinion based on the same three reasons); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (internal quotations and citation omitted).

**3.** Dean argues that the ALJ erred by rejecting the lay witness testimony of her daughter without comment. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (an ALJ may reject a lay witness's testimony only "upon giving a reason germane to that witness"). Although the ALJ said he had "strongly considered" the testimony of Dean's daughter and "incorporated the appropriate limitations in the residual functional capacity," he also noted that "the activities listed [in the daughter's report] are similar to those described by the claimant, which show few restrictions." The residual functional capacity (RFC) assessment does not incorporate the limitations about which Dean's daughter testified. While it's unclear whether the ALJ outright rejected the testimony of Dean's daughter, we need not decide whether he erred, because any error was harmless. *See Molina*, 674 F.3d at 1122 (concluding that "[a]lthough the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as Molina's own testimony, and the ALJ's reasons for rejecting Molina's testimony apply with

4

equal force to the lay testimony," where one of the reasons for rejecting the claimant's testimony was that "her own testimony about her daily activities" contradicted the alleged severity of her impairment).

**4.** Dean also argues that the ALJ ignored the mandatory provisions of SSR 96-8p, which require an ALJ to consider "all of the relevant evidence in the case record," including the side effects of medication, when assessing a claimant's RFC. There is no merit to this argument, however, since the ALJ was not required to consider evidence that he had already discredited, including testimony from Dean, her daughter, and her treating doctor, all of which related to Dean's fatigue and drowsiness. *See Batson*, 359 F.3d at 1197 (stating that when determining the claimant's residual functional capacity, the ALJ is "not required to incorporate evidence from the opinions of . . . treating physicians" that have been "permissibly discounted"). Furthermore, the ALJ did consider limitations on Dean's ability to use her shoulder and incorporated them in the RFC to the extent he determined appropriate.

**5.** Dean further argues that the ALJ's finding that Dean can perform other work is not supported by substantial evidence. Because the ALJ did not err in rejecting the testimony of Dean, her daughter, and her treating doctor, however, the evidence in the record supports the ALJ's finding that Dean can perform other work. *See id.*

5

**AFFIRMED.**